JAMES MORAN vs. CORLISS STEAM ENGINE CO.

PROVIDENCE—JULY 8, 1899.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Negligence. Unforeseen Cause.*

In view of the subtle and dangerous nature of electricity, an employer making use of it is bound to the exercise of a very high degree of care, and to take reasonable precautions to protect his servants against injury from the accidental crossing or contact of wires, caused by their sagging or breaking or by high winds and other causes, and the consequent charging of the wire carrying the current used in his business with a dangerous current from a more heavily charged wire.

(2) *Evidence.*

In an action to recover for injuries received from an electric current, owing to the unsafe condition of the machinery on which plaintiff was employed, evidence of shocks received by others subsequently to that received by the plaintiff is admissible, as tending to show the condition of the machine as to insulation at the time of the accident.

(3) *Master and Servant. Independent Contractor.*

A master owes to a servant the duty of supplying reasonably safe appliances for him to do the work required of him, and the delegation of this duty to another, though an independent contractor, will not relieve the master from liability for an injury to the servant resulting from a neglect of the duty.

TRESPASS ON THE CASE for negligence. The plaintiff was employed by the defendant about a crane, used to raise and lower iron, which was operated by power furnished by an electric current. An iron chain attached to the crane and used to manipulate it became charged with a dangerously large amount of electricity, and the plaintiff, taking hold of the chain in the discharge of his duties, was injured.

Heard on petition of defendant for a new trial. New trial denied.

MATTESON, C. J. We think that the testimony shows that the crane at which the accident occurred was defectively constructed, either in that there was a metallic connection between the hauling-chain and the motor, or, at least, that the insulation between them was not sufficient to prevent a leakage of electricity from the motor to the hauling-chain,

and that, though the leakage of electricity from the motor to the lifting-chain and hauling-chain was probably insufficient to be dangerous with no greater current than that designed to be used to operate the crane, yet it was liable to become dangerous from the presence of a more powerful current. The testimony shows that at the time of the accident, February 6, 1896, at a little after five o'clock in the afternoon, the wind was blowing at the rate of forty miles an hour, with puffs at the rate of sixty miles—conditions favorable to the intermittent crossing or contact of electric wires. We think the jury would have been warranted in finding that the accident was due to the contact, outside of the defendant's premises, between the wire supplying electricity to the motor of the crane and some more heavily-charged wire, whereby, by reason of defective insulation, possibly occasioned by the rubbing together of the wires, a current much exceeding the usual current was transmitted over the wire to the motor of the crane and thence, by reason of faulty construction of the crane, to the hauling-chain. In so far, therefore, as the petition rests on the ground that the verdict is against the evidence, the question resolves itself into (1) this : Was the defendant reasonably bound to have anticipated the influx to its premises of a current of electricity sufficiently powerful to dangerously charge the metallic portions of its crane, and did it take reasonable precautions for the protection of its servants employed in the handling of the crane ? In view of the subtle and dangerous nature of electricity, the defendant making use of it was bound to the exercise of a very high degree of care for the protection of its employees against injury from such use. The accidental crossing or contact of wires, caused by their sagging or breaking or by high winds and other causes, and the consequent charging of a wire carrying a light current with a dangerous current from a more heavily charged wire, is, in our opinion, a sufficiently frequent occurrence to have suggested to the defendant the liability to accident from that cause and to have required it to take precautions against injury to its employees thereby. The testimony shows that light shocks had

been received from time to time by the men from the lifting-chain, and the defendant had supplied rubber gloves to be used by the pourers on that account. These shocks were notice to the defendant of the leakage of electricity from the motor to the chain, and were also notice that if from any cause a sufficient current of electricity was brought to the motor the leakage might be sufficient, not only to charge the lifting-chain, but also the hauling-chain or other metallic portions of the crane, unless properly insulated, with a dangerous current. Having this notice, we think the defendant was bound to have made the insulation between the motor and the hauling-chain so complete that the use of the hauling-chain would have involved no risk of injury by electricity. Our opinion is, therefore, that the verdict was not against the evidence on the issue of defendant's negligence.

(2)    The testimony with reference to shocks received by Houghton and Mahoney subsequently to that received by the plaintiff, to which exception was taken, was, we think, admissible as tending to show the condition of the chain as to insulation at the time of the accident.

(3)    The defendant also took the point that, as at the time of the accident to the plaintiff the cranes were, as it contends, in the possession of the General Electric Company, an independent contractor, and were not delivered to it until sometime in March, 1896, the defendant, not having control of the cranes, was not responsible. The court refused to so charge, and the defendant excepted. We think the request was properly refused. The master owes to the servant the duty of supplying reasonably safe appliances for him to do the work required of him ; and the delegation of this duty to another, though an independent contractor, will not relieve the master from liability for an injury to the servant resulting from a neglect of the duty. *Trainor* v. *Philadelphia & Reading Railroad Co.*, 137 Pa. St. 148 ; 2 Bailey's Personal Injuries Relating to Master and Servant, §§ 2561, 2571.

Petition for new trial denied, and case remitted to the Common Pleas Division with direction to enter judgment on the verdict.

Stiness, J. (dissenting).   On account of the somewhat peculiar features of this case, I think it is proper to state the grounds upon which I differ from the opinion of the court.

I fully agree with the rule that, in dealing with a dangerous element, the highest degree of care is required.   Applying this rule, however, I fail to see that the defendant was guilty of negligence.   Up to the time of the accident the insulation of the machine, though not perfect, was such that it was not dangerous.   No harm had come from it, and the leakage of electricity was slight.   The current in use was not dangerous in itself.   The court finds that the accident was due to a more powerful current from the contact of wires outside the defendant's premises, probably caused by a violent storm, and holds that the defendant was bound to have anticipated such a possibility.   This is the statement to which I am unable to agree.   There is nothing to show that the defendant knew that such a contact had ever occurred before or was likely to occur, except, as everybody may know, that in a violent storm poles may be blown down.   True, this is a possibility.   So it is a possibility that freshets may occur. Yet railroad companies, which are held to the highest degree of care, are not held liable for damage caused by extraordinary and unexpected floods and storms.   Reasonable foresight is not held to go to the limit of bare possibilities.   In the absence of anything to show the defendant's knowledge or control of outside wires, or any insecurity of the poles on which they were strung, or their adjacency to the wires leading to its factory, or a reasonable expectation that its wires were liable to become charged by other wires, it seems to me that the principle which applies to railroads, under similar conditions, is analogous and proper.   I do not think that a duty should be charged upon a mere possibility, which is all that appears in this case.   Except for the electrical current from outside, there is nothing to show negligence.

*David S. Baker and Dennis H. Sheahan,* for plaintiff.
*Hayes & Hayes,* for defendant.