Landella KANELOS, Appellant,

v.

Milton KETTLER, Appellee.

No. 21215.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 7, 1967.

Decided Oct. 2, 1968.

Mr. Joseph B. Calandriello, Washington, D. C., for appellant.

Mr. Cornelius H. Doherty, Washington, D. C., for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant sued appellee for damages on account of personal injuries sustained in a fall allegedly caused by negligent failure to maintain the safety of an apartment which appellee had leased to appellant. The offending condition was the bathroom door sill which, though perhaps in good order when appellant took possession, soon thereafter was in a state of deterioration. On three separate occasions prior to her fall, appellant reported the defect to appellee and asked that it be corrected, but nothing was done about it. Then came the fateful day on which appellant, in her words, was "going back into the bathroom * * * when I got my bedroom slipper caught in the sill and went down."

Appellant's litigative theory was that appellee's disregard of appellant's requests for the repair was violative of the District of Columbia Housing Regula-

tions.[1] Witnesses at the trial testified to the condition of the door sill in descriptive terms plainly connoting the peril that ultimately overtook appellant.[2] When appellant rested her case, however, appellee moved for a directed verdict on the hypothesis that no negligence on his part had been shown. The trial judge granted the motion on the ground that appellant had assumed the risk of injury from the faulty door sill.[3] This ruling we must test upon the view of the evidence that best supports appellant's claim upon this appeal.[4]

## I

Prior to the advent of the Housing Regulations, we drew upon the common law for precedents in cases of this type. "Absent any statutory or contract duty," we had said, "the lessor is not responsible for an injury resulting from a defect which developed during the term."[5] Here we do not find a contractual mandate to repair[6] but, as we held correspondingly in Whetzel v. Jess Fisher Management Company,[7] the Housing Regulations did impose maintenance obligations upon appellee which he was not free to ignore.

Section. 2301 of the regulations provides that "[n]o owner, licensee, or tenant shall occupy or permit the occupancy of any habitation in violation of these regulations." Section 2501 specifies that

"Every premises accommodating one or more habitations[8] shall be maintained and kept in repair so as to provide decent living accommodations for the occupants. This part of this Code contemplates more than mere basic repairs and maintenance to keep out the elements; its purpose is to include repairs and maintenance designed to make a premises or neighborhood healthy and safe."

And in somewhat greater particularity, Section 2505 directs that

1. Housing Regulations of the District of Columbia (1956). See Whetzel v. Jess Fisher Management Co., 108 U.S.App. D.C. 385, 390–392, 282 F.2d 943, 948– 950 (1960), for a discussion of their origin, purposes and general scope.

2. They said, in substance, that it was cracked, splintery and loose. Appellant added that "it was dangerous that you could get your foot caught in it."

3. Delineating the basis for his ruling in his statement upon discharge of the jury, the trial judge said:
 "[I]t is clear from the evidence that the alleged dangerous defect in the board of which the plaintiff complains was known to her at the time she fell and for some months prior thereto * * *. [H]er continued use of the alleged defective board makes the doctrine of assumption of risk applicable to this case. In other words, the plaintiff under the facts in this particular case must be held to have assumed the risk of the alleged dangerous condition fully known to her. * * * If it was defective, she knew it for months, but she continued to use it. Therefore, she assumed the risk."

4. E. g., Peigh v. Baltimore & O. R. R., 92 U.S.App.D.C. 198, 199, 204 F.2d 391, 392, 44 A.L.R.2d 671 (1953); Higashi v. Shifflett, 90 U.S.App.D.C. 302, 195 F. 2d 784 (1952).

5. Bowles v. Mahoney, 91 U.S.App.D.C. 155, 159, 202 F.2d 320, 323 (1952), cert. denied 344 U.S. 935, 73 S.Ct. 505, 97 L.Ed. 719 (1953). See also Paratino v. Gildenhorn, 55 App.D.C. 271, 272, 4 F.2d 938, 939 (1925); Security Sav. & Commercial Bank v. Sullivan, 49 App.D. C. 119, 120, 261 F. 461, 462 (1919).

6. In the lease, appellant covenanted to make all repairs rendered necessary by [her] negligence or carelessness "such as stoppage of drain pipes and sewers, breakage of window glass, and all other repairs not due to fault in the building or the management thereof." She also agreed to "surrender the [premises] at the expiration of her tenancy in good order, ordinary wear and tear and damages by the elements excepted." The lease reserved appellee's privilege to "enter said premises at any reasonable hour to make any necessary repairs or to protect the same against the elements." No other provision of the lease bore on the matter of repairs.

7. Supra note 1.

8. Appellee's apartment building was clearly of this character.

"Each floor shall be structurally sound, reasonably level, and free of holes and wide cracks. Each floor shall be free of loose, splintered, protruding, or rotting floor boards."

■ In *Whetzel*, we announced that Sections 2301 and 2501 "impose * * * obligations which are extended to both the landlord and tenant," [9] and it is clear enough that the same consequences attach equally to Section 2505.[10] Thus we find, as we did similarly in *Whetzel* that these three provisions tax appellee with "a duty of care toward [his] tenants. This duty can be satisfied either by making the necessary repairs or by terminating use of the premises as a place of human habitation." [11] And "[b]reach of that duty," we reaffirm, "is * * * at least evidence of negligence." [12]

■ Section 2301 of the Housing Regulations prohibits one's occupancy as well as one's sufferance of another's occupancy of infringing premises. More pointedly, it provides that "[n]o * * * tenant shall occupy * * * any habitation in violation of these regulations." Thus, as we further held in *Whetzel*, Section 2301 "also creates a duty of care which the appellant owes to herself. Breach of this duty is likewise at least evidence of contributory negligence." [13]

■ In the degree apposite, these propositions, of course, hold true for this case. The trial judge, however, rejected all notion that our appellant was contributorily negligent as a matter of law, and with this view we are in complete harmony.[14] The question—and the sole question—we are summoned by this appeal to decide is whether the evidence established an assumption of risk as a matter of law. For reasons we are now about to consider, we hold that it did not.[15]

9. 108 U.S.App.D.C. at 392, 282 F.2d at 950. We said the same of § 2504. See note 10, *infra*.

10. Section 2505 bears substantial similarity to § 2504, see note 9, *supra*, which reads: "Each interior wall or ceiling shall be structurally sound and free of loose plaster or other loose structural or surfacing material. Each interior wall or ceiling shall be free of holes and wide cracks." And see National Bank of Washington v. Dixon, 112 U.S.App. D.C. 183, 184–185, 301 F.2d 507, 508– 509 (1961).

11. 108 U.S.App.D.C. at 392, 282 F.2d at 950.

12. *Id.* at 392, 282 F.2d at 950. *See also* Klein v. Price, 118 U.S.App.D.C. 54, 56, 331 F.2d 800, 802 (1964); National Bank of Washington v. Dixon, *supra* note 10, 112 U.S.App.D.C. at 184–185, 301 F.2d at 508–509.

13. Whetzel v. Jess Fisher Management Co., *supra* note 1, 108 U.S.App.D.C. at 392, 282 F.2d at 950.

14. *Id.* at 392, 282 F.2d at 950. Compare Muldrow v. Daly, 117 U.S.App.D.C. 318, 320, 329 F.2d 886, 888 (1964); Sears, Roebuck & Co. v. George, 75 U.S.App.D. C. 73, 74, 125 F.2d 739, 740 (1941).

15. As we have observed, appellee predicated his motion for the directed verdict upon an absence of proof of negligence on his part, but the trial court granted the motion on the basis of an assumption of the risk. We note, too, that appellee did not affirmatively assert assumption of risk as a defense either in his pleadings, see F.R.Civ.P. 8(c), or in his pretrial statement, see Pretrial Instructions to Counsel § II–A–2(g) (D.D. C.1967), incorporating a similar requirement contained in § II–A–2(g) of the 1962 Instructions. Rather, in addition to the protest that he was not guilty of negligence, appellee relied solely upon a claim of contributory negligence. Despite their several common features, there remain fundamental differences between the doctrines of assumption of risk and contributory negligence, see Restatement (Second) of Torts § 496 A, comment *d* (1965), so that evidence which might refute the one does not necessarily have that capability as to the other. We cannot say that in the circumstances here appellant had a fair chance to meet the charge of assumption of risk prior to losing the verdict on that rationale.

Courts must, of course, conform their rulings to the law as they see it, irrespective of the deviating views and litigating courses of counsel. But this is not to say that a court may raise for the first time and simultaneously rule on a new point which the losing party has had no occasion to address with evidence. We sug-

## II

█ Risks, in legal contemplation, are assumed, not simply because they inhere in the situation out of which the claimant's injury arises, but because the claimant, with knowledge of the risk and full appreciation of its dangers, is willing to accept and gamble on it.[16] Thus, in common with the general American law on the subject,[17] we have rejected applications of the assumed risk doctrine where the exposure, even to a recognized hazard, was not voluntary.[18] And

"The plaintiff's acceptance of the risk is not to be regarded as voluntary where the defendant's tortious conduct has forced upon him a choice of two courses of conduct, which leaves him no reasonable alternative to taking his chances. A defendant who, by his own wrong, has compelled the plaintiff to choose between two evils cannot be permitted to say that the plaintiff is barred from recovery because he has made the choice." [19]

So, "[t]o call this defense into play requires a showing that the person charged has no duty to protect the other from the risk," [20] and our decisions have given this requirement full sway. The citizen who travels over public streets and sidewalks does not assume the risk of injury as against the municipality legally charged with keeping them in safe condition.[21] The pedestrian who uses a temporary walkway made slippery by snow does not assume the risk as against the contractor who by ordinance is required to keep the walkway clear of snow.[22] The visitor who proceeds to her destination in darkness through a common hallway does not assume the risk as against the landlord whose duty it was to maintain lighting in the hallway.[23] The rescuer who extricates another from harm threatened by a third person does not assume the risk as against the latter where the only remaining choice is acquiescence in continuance of the peril.[24]

█ These decisions are but applications of the rule barring assumption of risk as a viable doctrine "where the plaintiff," whether tenant [25] or not,[26] "is compelled to accept the risk in order to exercise or protect a right or privilege, of which the defendant has no privilege to deprive him." [27] For "[o]ne's acceptance

---

gest that in any comparable situation arising hereafter, the court should afford the party against whom the verdict is sought an opportunity to reopen the evidence before the ruling becomes irrevocable.

16. Restatement (Second) of Torts § 496 E, comment *a* (1965).

17. See W. Prosser, Torts § 67 at 465–468 (3d ed. 1964); 2 F. Harper & F. James, Torts § 21.3 (1956).

18. See the cases cited *infra* notes 20 to 24.

19. Restatement (Second) of Torts § 496 E, comment *c* (1965).

20. Dougherty v. Chas. H. Tompkins Co., 99 U.S.App.D.C. 348, 350, 240 F.2d 34, 36 (1957).

21. See Altemus v. Talmadge, 61 App.D.C. 148, 150, 58 F.2d 874, 876, cert. denied 287 U.S. 614, 53 S.Ct. 16, 77 L.Ed. 533 (1932). See also Smith v. District of Columbia, 89 U.S.App.D.C. 7, 189 F.2d 671, 39 A.L.R.2d 773 (1951).

22. Dougherty v. Chas. H. Tompkins Co., *supra* note 20.

23. Nielsen v. Barclay Corp., 103 U.S.App. D.C. 136, 255 F.2d 545 (1958).

24. Aylor v. Intercounty Constr. Corp., 127 U.S.App.D.C. 151, 155, 381 F.2d 930, 934 (1967).

25. See Roman v. King, 289 Mo. 641, 233 S.W. 161, 25 A.L.R. 1263 (1921); Rush v. Commercial Realty Co., 7 N.J.Misc. 337, 145 A. 476 (S.Ct.1929). See also Looney v. McLean, 129 Mass. 33 (1880); State of Maryland, for Use of Pumphrey v. Manor Real Estate & Trust Co., 176 F.2d 414 (4th Cir. 1949).

26. See Foster v. A. P. Jacobs & Associates, 85 Cal.App.2d 746, 193 P.2d 971, 974–978 (1948); Seelback v. Mellman, 293 Ky. 790, 170 S.W.2d 18, 19 (1943); Frizzell v. Sullivan, 117 Md. 388, 83 A. 651, 652 (1912); Williamson v. Derry Elec. Co., 89 N.H. 216, 196 A. 265, 266–267 (1938).

27. Restatement (Second) of Torts § 496 E, comment *c* (1965). Note, however, Fitzpatrick v. Fowler, 83 U.S.App.D.C. 229, 168 F.2d 172 (1948).

of a risk of harm created by another's nonperformance of duty does not represent a free choice where there is no feasible alternative save to sacrifice an interest which the duty exists ultimately to subserve." [28] Quite obviously, unless these considerations are to govern cases like that at bar, the responsibilities placed upon landlords by the Housing Regulations are effectively nullified by the mere circumstance that the tenant remains in possession.[29]

 Thus we are guided unfailingly to the conclusion that direction of the verdict against appellant was error.[30] Appellee owed appellant the obligation, mandated by the Housing Regulations, to maintain the leased apartment, including the bathroom door sill,[31] in a reasonably safe condition. Appellant's evidence was of a caliber sufficient to require submission for the jury's determination of the issue whether that duty had been dishonored. If it was, appellee cannot now avoid liability by the suggestion that appellant was at liberty to avert the danger by moving out. She could not, in the face of appellee's affirmative duty to exert care, be held to have voluntarily assumed the risk of injury posed by his negligence.

We reverse the judgment appealed from and remand the case to the District Court for a new trial.[32]

Reversed and remanded for a new trial.

WILBUR K. MILLER, Senior Circuit Judge, concurs in the result.

---

28. Hewitt v. Safeway Stores, 131 U.S. App.D.C. 270, 404 F.2d 1247 (Feb. 6, 1968) (concurring opinion).

29. See Eckert v. Reichardt, 243 N.Y. 72, 152 N.E. 469, 470 (1926), where the issue was contributory negligence.

30. Since there must be a new trial, we treat briefly two problems raised here that might recur on the retrial.

One of appellant's witnesses was a health aide who gave assistance to appellant in her apartment at least twice weekly after her fall. Appellant's counsel asked this witness whether she had ever tripped or fallen over the bathroom door sill, explaining to the court at a bench conference that his purpose was to show the condition of the sill, and that the witness had informed him "that at least on more than one occasion she" had "slipped and tripped" over the sill. The judge sustained appellee's objection to the question, but we think the witness should have been permitted to answer. We have held that evidence showing prior accidents is, within limitations not exceeded here, admissible for its tendency to show the dangerous condition of the place at which the accident in suit occurred. E. g., Hecht Co. v. Jacobsen, 86 U.S.App. D.C. 81, 85, 180 F.2d 13, 17 (1950); Meyers v. Capital Transit Co., 75 U.S.App. D.C. 256, 126 F.2d 231 (1942). Our decisions, however, have not attached any significance to whether, when offered for this purpose, the accident sought to be shown took place before or after the accident out of which the lawsuit arose.

See Capital Transit Co. v. Webb, 79 U.S. App.D.C. 58, 142 F.2d 757 (1944). See also District of Columbia v. Armes, 107 U.S. 519, 524–525, 2 S.Ct. 840, 27 L.Ed. 618 (1882); 2 J. Wigmore, Evidence § 458 (3d ed. 1940). We perceive no reason why the showing cannot be made by evidence referable to subsequently-occurring accidents. Gilbert v. Diluth Gen. Elec. Co., 93 Minn. 99, 100 N.W. 653, 654 (1904); Moran v. Corliss Steam-Engine Co., 21 R.I. 386, 43 A. 874, 875, 45 L.R.A. 267 (1899).

The trial judge also refused to admit mortality tables as evidence of appellant's life expectancy because she is a diabetic whose life expectancy, in the court's view, is not the same as that of a person in good health. While we may assume the validity of the medical fact stated by the judge, we do not agree that that fact warranted exclusion of the tables. Ill health or disease of the person whose life expectancy is in inquiry does not affect the admissibility of a standard mortality table, but only its weight in the particular application. See the cases collected in Annot., 116 A.L.R. 416–432 (1938). Compare City-Wide Trucking Corp. v. Ford, 113 U.S.App.D. C. 198, 203, 306 F.2d 805, 810 (1962).

31. D.C. Housing Regulations § 2505, quoted supra p. 953. The sill was clearly a part of the floor of the apartment.

32. On retrial, appellee's primary negligence and appellant's contributory negligence remain, of course, issues for the jury.