**Marjorie G. POLON, Plaintiff-Appellant,**

v.

**R. L. HUFFINES, Jr., et al., Defendants-Appellees.**

**No. 18520.**

United States Court of Appeals, Seventh Circuit.

July 16, 1971.

Kenneth L. Kwiatt, Chicago, Ill., Louis Kipnis, New York City, for plaintiff-appellant.

Seymour J. Kurtz, Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and KERNER and PELL, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from a minority shareholder's derivative action brought on behalf of the shareholder's corporation, Defiance Industries, Inc. (Defiance), against Victor Muscat,[1] former president, director and principal shareholder. Subsequent to the commencement of the action the nominal defendant, Defiance, was merged into El-Tronics, Inc. (El-Tronics). Both El-Tronics and plaintiff-shareholder appeal the district judge's decision, sitting without a jury, that "plaintiff has failed to establish by a preponderance * * of the evidence any of the necessary allegations in order to recover."

Plaintiff-shareholder based her complaint on alleged breaches of fiduciary duties by defendant Muscat in acquiring shares of Guaranty Bank and Trust Company (Guaranty) stock for Defiance. Primary reliance for evidence of these breaches is placed on the action of Muscat and others in forming a corporate shell, Management Corporation (Management), for the purpose of acquiring a block of 5,600 shares of Guaranty stock in 1962.[2] This stock was the sole asset of Management and was thereafter transferred to Defiance in August of 1963. Plaintiff claimed the stock was grossly over-valued so that the subsequent transfer to Defiance was "a bail out" by the defendant.

As mentioned, Defiance was merged into El-Tronics, Inc. subsequent to the commencement of this action. Approximately three months after this merger, El-Tronics was indicted for, and pled guilty to, violations of the Illinois Bank Holding Company Act of 1957, Ill.Rev. Stat. Ch. 16½ §§ 71–76. The Illinois Act makes it unlawful for any action to be taken which results in an entity owning 15% or more of the voting shares of each of two or more banks.[3] Ill.Rev. Stat. Ch. 16½ § 73. In pleading guilty, El-Tronics paid assessed fines of $60,-000 and expended $6,000 in attorneys' fees.

Although the above events occurred subsequent to service of the complaint in this case, plaintiff adopted the position in the district court "that she could recover for Defiance all of the losses and damages sustained by reason of Muscat's breaches of fiduciary obligations to Defiance."[4] The district court apparently agreed the indictment and guilty plea were cognizable under the

1. Messrs. Huffines and Krock, though named as defendants, were eliminated from the case when service of process upon them was quashed early in the proceedings.

2. Plaintiff alleged and defendant admits that he received a salary from Guaranty National Bank. Plaintiff made no effort to prove this salary improper or unfair to

the corporation. We therefore regard its receipt by the defendant as inconsequential. Fletcher's Cyclopedia Corporations, Vol. 3, Ch. 11, § 897 (1965).

3. In addition to the shares of Guaranty National Bank, Defiance also held shares of Mercantile National Bank of Chicago.

4. Brief for appellant at page 6.

complaint; since the defendant does not contend otherwise, we regard this question as settled.

## GUARANTY STOCK

Plaintiff contends the sale of Guaranty stock to Defiance by Management and other acquisitions of Guaranty stock constitute breaches of fiduciary duty by defendant Muscat. Since plaintiff claims to be derivatively damaged as a result of these breaches, a resulting corporate injury must be shown. For proof of damages, plaintiff relies on an annual report form prescribed by the Securities Exchange Act of 1934. The report, known as a Form 10–K, was filed by Defiance and contained valuations of Guaranty stock held by Defiance. These valuations were considerably below the purchase price of the shares paid by Defiance; however, the submitted statements also contained the following language: "Determined by reference to the average bid and asked prices. It is not practicable to estimate the amounts which could be realized if blocks of shares of the size indicated were offered for sale."

■ Plaintiff does not contend that the above quoted language is inaccurate or untrue, yet, this is the only evidence which is relevant to fair market value. Since there is no evidence of actual or market value, the district court was correct in concluding that plaintiff failed to prove that the Guaranty stock transactions damaged Defiance.

## ILLINOIS BANK HOLDING COMPANY ACT VIOLATION

■ It is undisputed that El-Tronics pled guilty to violations of the Illinois Bank Holding Company Act and that this criminal liability resulted from acts taken by Defiance while under the aegis of defendant Muscat. Both plaintiff and El-Tronics have maintained throughout this law suit that the criminal liability was a result of a breach of fiduciary duty on the part of Muscat. Apparently, plaintiff's theory is that if the purchases of Guaranty stock were breaches of fiduciary duty, then the resulting criminal liability was a direct consequence of those breaches. However, since plaintiff has failed to prove that Muscat breached any duty in purchasing the Guaranty stock, this theory of recovery is no longer apposite.

■ The only other rationale advanced by plaintiff in this court, or in the district court, is that the defendant breached his fiduciary duties to Defiance by placing that corporation in violation of the Illinois criminal statutes. However, neither the plaintiff nor the corporation has shown that the defendant was confronted with a conflict of interest, or the appearance thereof, in taking these acts. Plaintiff, nevertheless, urges that defendant had a duty to fairly and reasonably represent the best interests of the corporation.[5] We agree with this statement; yet, plaintiff cites no authority which imposes strict liability for errors of business judgment in the absence of a conflict of interest or applicable statute of the state of incorporation. The common law approach to alleged breaches in comparable situations is to determine the liability of a defendant by reference to traditional notions of negligence.[6] While the fact that criminal liability was imposed is evidence of the erroneous nature of defendant's judgment, neither the plaintiff nor the corporation has argued or introduced evidence under a negligence theory. Litigants must bear the burden of advancing their cause, and these claimants failed to present this theory

5. See n. 6 and cases cited therein.

6. Although counsel appear to believe that Illinois law governs this dispute, we think it likely that Ohio law is controlling. National Lock Co. v. Hogland, 101 F.2d 576, 579 (7th Cir. 1939) ; Paulman v. Kritzer, 74 Ill.App.2d 284, 289, 219 N.E. 2d 541 (1966). However, the law of Illinois (Precision Extrusions, Inc. v. Stewart, 36 Ill.App.2d 30, 183 N.E.2d 547 (1962)) and Ohio (Goff v. Emde, 32 Ohio App. 216, 167 N.E. 699 (1928)) is in accord with the general principle. Fletcher's Cyclopedia Corporations, Vol. 3, Ch. 11, §§ 1024, 1025, 1030 (1965).

to this court and to the district court. Moreover, claimants were apprised of the deficiencies in their theory of relief by the district court but did not choose to modify that theory. The closing argument so indicates:

Attorney for corporation: Your Honor, after listening carefully to [counsel's] remarks on behalf of Victor Muscat, I find it most significant that nowhere did he treat the matter of the violation of the Illinois Bankholding Act. There has been no evidence introduced either by way of exploration, mitigation, or any other attempt to try and explain this most flagrant breach of an Illinois Act, especially with respect to the fact that the corporate defendant in this matter has been required to obligate itself to the amount of $60,000 of a fine plus $6,000 for attorney's fees in this matter.

As I mentioned in my opening statement, Mr. Muscat was an officer and a director at the time the matters complained of in the plaintiff's complaint were perpetrated. I don't have to instruct your Honor that the man is a fiduciary. He is to be held in the highest trust toward the shareholders of the corporation and this was clearly breached.

The Court: What was the breach?

Attorney for corporation: The purchase of the 15% interest in the two Illinois Banks resulting in the fine imposed against the corporation.

The Court: I thought one of the requirements for the breach of a fiduciary relationship was to enhance or enrich himself. I thought that is what we meant by a breach. I mean, any mistake in judgment or knowledge of the law I have never known to be considered by any court as a breach of a fiduciary relationship.

Attorney for corporation: Well, your Honor, then I would defer to the argument of Counsel for the Plaintiff.

The Court: You don't have to defer to anything. I am just trying to find out if there is some law in New York or Ohio or any place else that is different than the law that I am familiar with, that a breach of a fiduciary relationship is an attempt by one in that capacity to enrich himself at the expense of the one to whom he bears a fiduciary relationship.

It may be that the predicate to the district court's query is not entirely correct; however, we believe that this and other inquiries by a most diligent district judge should have been sufficient. to suggest to appellants that their claim was founded on neligence. Since there is no evidence of negligence aside from the assessed fines and since the negligence theory was presented neither to this court nor to the district court, we affirm the judgment of the court below. *Cf.* Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1940); Kanelos v. Kettler, 132 U.S.App. D.C. 133, 406 F.2d 951, 954, n. 15 (1968).

Affirmed.