Donald E. SCOGGINS, Appellant,

v.

Glenn G. JUDE et al., Appellees.

No. 79–814.

District of Columbia Court of Appeals.

Argued May 7, 1980.

Decided Sept. 4, 1980.

**1000**

Ronald E. Tucker, Washington, D. C., for appellant.

Edward S. Horowitz, Washington, D. C., for appellees.

Before KELLY, GALLAGHER and FERREN, Associate Judges.

FERREN, Associate Judge:

Appellees, a tenant and a guest in an apartment owned by the appellant–landlord, were awarded a judgment on a jury verdict for property damage and personal injuries suffered when part of the living room ceiling fell. Appellant contends that (1) the trial court should not have submitted the question of his negligence, as landlord, to the jury because there was insufficient evidence he had notice that the ceiling crack was leaking; (2) the court erred in withholding the issue of contributory negligence from the jury; and (3) in any event, appellant had satisfied the claim by abatement of the last two months of the tenant's rent. We agree that the jury should have considered whether the tenant (but not the guest) was contributorily negligent. Accordingly, we affirm the judgment for the appellee–guest but reverse and remand for a new trial of the appellee–tenant's claim.

I.

Appellee Rosalind M. Eugene, a tenant, lived at 55 Forrester Street, S.W., an apartment building owned by the appellant, Donald E. Scoggins. On November 9, 1977, Eugene asked a friend, Glenn G. Jude, to help her move some furniture from under a dripping crack in the living room ceiling. As Eugene and Jude worked, a large portion of the ceiling plaster, saturated with water, fell on them. Eugene and Jude filed suit against Eugene's landlord (Scoggins) for property damage and personal injuries.

At a jury trial, Eugene and Jude both testified that the crack had begun as a small crack several months before the incident but had widened and dripped more intensively and frequently as the weeks passed. Eugene testified that she had called Scoggins about the problem many times, and that he had seen the crack about a week before the accident but had taken no steps to repair it. Jude confirmed that Scoggins had visited the apartment about a week before the ceiling fell, looked at the crack, and saw it dripping. Appellees' testimony was substantially corroborated by Gloria Moss, who had lived with Eugene in August and September 1977. Moss testified that Eugene had reported the crack and dripping to Scoggins during those two months, and that Scoggins had come to the apartment to inspect the ceiling.

Scoggins admitted that he had seen the crack in the ceiling but that "considering some other budget restraints I had at the time, I felt in my particular judgment it was something I thought I would have a chance to take care of before any real damage would take place."

At the end of December 1977, Eugene voluntarily moved out of the apartment, owing two months' rent. Scoggins permit-

ted her to leave without paying because of the accident.

At the end of all of the testimony, counsel for Jude and Eugene made a motion for a directed verdict. The court ruled that the issue of the landlord's negligence would go to the jury but that, as a matter of law, Scoggins would not be allowed to rely on the affirmative defenses of assumption of risk and contributory negligence. The trial court buttressed this conclusion by noting that Scoggins had not included either defense in his pleadings.

The jury returned a verdict for Eugene and Jude, awarding them $7,100 and $3,600, respectively. Scoggins appeals the judgments entered on the verdict.

## II.

■ We cannot accept Scoggins' contention that there was insufficient evidence he had notice of the leaking crack to warrant submission of the negligence issue to the jury. Scoggins himself testified that "a few weeks or so prior to the incident" he visited the apartment after Eugene had complained about the crack. Scoggins had examined the crack and determined that it would cause no real damage before he had "a chance to take care of" it. Scoggins, therefore, clearly knew about the crack.

He contends, however, that the cracks he saw on this visit were not "wide cracks" within the meaning of the District of Columbia Housing Regulations, § 2504.[1] He argues, moreover, that unless he was on notice that water was dripping from the crack—a violation of Housing Regulations

§§ 2507 and 2511—he was not on notice of violations of the regulations and, therefore, could not be held liable for negligence.

■ This argument rests on a faulty premise. Evidence of compliance with a statutory or administrative norm neither establishes due care nor prevents a finding of negligence. *See Turner v. American Motors General Corp.*, D.C.App., 392 A.2d 1005, 1007 (1978). In any event, although Scoggins testified that he had not seen water dripping from the crack or the buckets collecting water, three witnesses—Jude, Moss, and Eugene—testified to the contrary. Their testimony was sufficient to create an issue of fact for the jury. Scoggins' first argument fails.

## III.

■ Scoggins also contends that, in discharging Eugene's obligation to pay the last two months' rent, he had satisfied any claim that Eugene might make, thus barring the present suit.[2] Scoggins, however, did not plead or make this argument before the trial court. *See* Super.Ct.Civ.R. 8(c).[3] Absent a manifest miscarriage of justice, this court, in civil cases, will not accept an argument presented for the first time on appeal. *See W. W. Chambers, Inc. v. Audette*, D.C.App., 385 A.2d 10, 15 (1978); *Dunn v. Evening Star Newspaper Co.*, D.C. App., 232 A.2d 293, 297 (1967).

■ There can be no miscarriage of justice on this issue because there is no record support for Scoggins' contention that his forgiveness of two months' rent legally sat-

---

1. 5G DCRR [D.C. Housing Regulations] § 2504 (1979) provides:

   Each interior wall or ceiling shall be structurally sound and free of loose plaster or other loose structural or surfacing material. Each interior wall or ceiling shall be free of holes and wide cracks.

2. Such satisfaction of Eugene's claim, of course, would not bar Jude's action.

3. Super.Ct.Civ.R. 8(c) provides in part:

   AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, ... assumption of risk, contributory negli-

   gence, ... and any other matter constituting an avoidance or affirmative defense.

   We recently concluded that "[a]lthough orderly progress of litigation requires that parties have notice of the claims and defenses asserted, there is room for flexibility in interpreting Rule 8(c), and where no prejudice results from a party's failure to adhere to the letter of the rule, a defense should not be lost." *Jackson v. D. C.*, D.C.App., 412 A.2d 948, 951 (1980) (citations omitted). This flexible interpretation of Rule 8(c), however, does not necessarily apply to a defense—such as Scoggins' claim of satisfaction—that was not raised before the trial court. *Compare* Part IV *infra*.

isfied Eugene's claim. Scoggins testified that when Eugene gave notice of her intent to move, he told her: "Since you are moving at the end of the year because of what happened I'll just abate more or less as an inconvenience–type thing[.]" On cross–examination, Eugene agreed that she "and Mr. Scoggins talked about allowing [her] to leave under those circumstances because th[e] accident did happen." This testimony, however, does not establish that Scoggins offered, and Eugene accepted, settlement of every claim whatsoever for both personal injury and property damage arising out of the ceiling incident. The testimony establishes only that Scoggins abated the rent in consideration of Eugene's inconvenience in having to put up with fallen plaster and a hole in the ceiling. On this record, we cannot find evidence sufficient to support appellant's belated claim of satisfaction.

### IV.

Finally, appellant claims that the trial court erred in refusing to submit the issue of contributory negligence to the jury.

■ A. We must deal, first, with appellees' contention that Scoggins cannot now allege contributory negligence because he did not assert it as a defense in the pleadings. Although this argument comports with a literal construction of Super.Ct. Civ.R. 8(c), see note 3 supra, we recently held that "a defense should not be lost" where the plaintiff has notice of it and no prejudice results from failure to include the defense in the pleadings. *Jackson v. District of Columbia*, D.C.App., 412 A.2d 948, 951 (1980) (citing cases). Scoggins' reliance

on contributory negligence satisfies our flexible standard. Although he did not assert it as a defense in his answer, he did note in his pretrial settlement statement that appellees were contributorily negligent in hanging plants from, and being present under, the damaged ceiling. *Compare Kanelos v. Kettler*, 132 U.S.App.D.C. 133, 136 n.15, 406 F.2d 951, 954 n.15 (1968). Eugene and Jude accordingly acknowledged in their own pretrial settlement statement: "It is plaintiffs' understanding that defendant will contend that plaintiffs were contributorily negligent in that a hanging plant may have been at least a partial cause of the ceiling falling in and that the ceiling fell due to the weight of the hanging plant." Appellees, therefore, had a full and fair opportunity to litigate the issue, and we can discern no prejudice to them in permitting the jury to consider it even though not raised in Scoggins' answer.[4]

B. The trial court ruled out a contributory negligence defense on the ground that one of the purposes of the Housing Regulations was protection of the safety of tenants and, as a result, "a tenant is not obligated to move where there is a condition within the leased premises which is or could be unsafe." The court premised its conclusion on *Martin v. George Hyman Construction Co.*, D.C.App., 395 A.2d 63 (1978), in which we held that neither contributory negligence nor assumption of risk bars recovery for breach of a duty imposed by regulations governing workplace safety, because either defense would defeat the purpose of the regulations. See id. at 68–69.[5]

---

4. The fairness of litigating the contributory negligence issue stands in contrast to confronting appellees for the first time on appeal with a claim of accord and satisfaction, which was never raised in the pleadings, by motion, or in the settlement statements, and was only suggested by the testimony. See Part III supra.

5. In order to reject the contributory negligence defense as a matter of law, the trial court had to assume that Jude and Eugene had established a Housing Code violation. See Martin, supra. At the same time, in denying plaintiffs' motion for a directed verdict, the court presumably assumed that the code violation was not

negligence per se. See generally Stevens v. Hall, D.C.App., 391 A.2d 792, 795–96 & n.2 (1978); Whetzel v. Jess Fisher Mgt. Co., 108 U.S.App.D.C. 385, 387–90, 282 F.2d 943, 945–48 (1960). Neither assumption can be automatic. It is not clear from the record that code violations were established as a matter of law; a reasonable juror could have found that no violation existed before the ceiling fell. On the other hand, it is conceivable that once such a violation were established, it could (but not necessarily would) be negligence per se. See Stevens, supra at 795–96 & n.2. On remand, therefore, the trial court must be sure, first, that the question of the landlord's negligence is

Appellant does not contest the trial court's refusal to instruct the jury on assumption of risk. Because of the relationship of this defense to contributory negligence, however, it is important to make clear why the court took this position and what the implications are for contributory negligence.

■ Assumption of risk is an available defense when a plaintiff voluntarily has incurred a known risk. *See Martin, supra* at 71; *Harris v. Plummer*, D.C.App., 190 A.2d 98, 100 (1963); *Kanelos, supra*, at 137, 406 F.2d at 955; Restatement (Second) of Torts § 496E, Comment a (1965). Commonly, this means voluntary exposure to a reasonable risk; *e. g.*, attendance at a baseball game, where balls are hit sharply into the stands. *See* Restatement, *supra* § 496A, Comment c.

■ In contrast, contributory negligence is unreasonable conduct. *Martin, supra* at 69. Specifically, it is conduct "which falls below the standard to which a plaintiff should conform for his own protection" and contributes to the plaintiff's injury. Restatement, *supra* § 463.

There is a hybrid that fits both concepts: voluntary exposure to an unreasonable risk. As the Restatement, *supra*, puts it:

The defense of assumption of risk, which rests upon the plaintiff's express or implied consent to encounter a known danger arising from the defendant's negligent or reckless conduct, is available to the defendant, not only where the plaintiff's conduct in voluntarily encountering the risk is reasonable, but also where it is unreasonable, and therefore negligent. In such cases the two defenses overlap, and the plaintiff may be barred from recovery by either, or both. [*Id.* § 466, Comment d.]

*See id.* § 496A, Comment d (discussing differences between assumption of risk and contributory negligence). Although such voluntary, unreasonable conduct fits under either or both headings, the authors of the Restatement, *supra*, focusing on the reasonable/unreasonable dichotomy, have characterized this hybrid as the first of two species of contributory negligence:

§ 466. Types of Contributory Negligence.

The plaintiff's contributory negligence may be either

(a) an intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know, or

(b) conduct which, in respects other than those stated in Clause (a), falls short of the standard to which the reasonable man should conform in order to protect himself from harm.

For purposes of our own analysis, we follow the Restatement's lead, limit the assumption–of–risk discussion to *reasonable* voluntary risk–taking, and consider all unreasonable risk–taking under the heading of contributory negligence, apropos of § 466(a) and (b).

■ In evaluating assumption of risk, the key word is "voluntarily." If a tenant, for example, has no reasonable alternative to remaining on the premises, he or she cannot be said, in fairness, to have made a voluntary decision to encounter the risk there. *See Martin, supra* at 71–74; *Kanelos, supra* at 137, 406 F.2d at 955; *cf. Dougherty v. Chas. H. Tompkins Co.*, 99 U.S.App.D.C. 348, 349–50, 240 F.2d 34, 35–36 (1957) (building contractor cannot force the public to "take or leave" the risk of an improperly maintained temporary sidewalk). This court would undermine the public policy implicit in the Housing Regulations if we were to permit the argument that a tenant of substandard premises had the reasonable alternative of leaving the premises under lease. Owners of rental housing too easily could avoid their responsibilities under the Regulations if it could be said that a tenant assumed the risks of

properly presented to the jury and, second, that any instruction as to assumption of risk and/or contributory negligence is premised on the

jury's findings with respect to the alleged code violations.

living there, including the risks of reasonable attempts to protect their property. *See Kanelos, supra* at 138, 406 F.2d at 956. Accordingly, in the present case, as the trial court recognized, that defense is unavailable to the landlord; he cannot argue for exoneration on the ground that the tenant and guest voluntarily had remained in the apartment, or, more specifically, voluntarily had moved furniture in the living room knowing there was danger from the cracked and leaking ceiling. *Id.; see Martin, supra; Dougherty, supra*; Restatement, *supra* § 496F (assumption of risk bars recovery for "violation of a statute, unless such a result would defeat a policy of the statute to place the entire responsibility for harm as has occurred upon the defendant").[6]

The issue of contributory negligence presents a different focus: whether the appellees' conduct, voluntary or not, was unreasonable. Scoggins contends that the court should have permitted the jury to decide whether Eugene and/or Jude were contributorily negligent in hanging plants from, and moving furniture under, the cracked and leaking ceiling.

■■■ We agree that contributory negligence, like assumption of risk, will be unavailable as a defense if the effect of a statute "is to place the entire responsibility for such harm as has occurred upon the defendant." Restatement, *supra* § 483; *see id.*, § 496F, Comment b. For example, in *Martin, supra*, we held that because of the substantial dangers inherent in many types of employment and the employees' inability to avoid those dangers, the industrial safety regulatory scheme imposes a duty higher than the common law duty of reasonable care upon those having control or custody of employees and their places of employ-

ment. *Id.* at 70–71. Consequently, unless an employee is willful, wanton, or reckless, he or she will not be barred from recovering damages for injuries attributable to an employer's failure to maintain reasonably safe working conditions, as required by the regulations. *Id.* at 71.

■■■ In contrast, the Housing Regulations impose only a duty of reasonable care upon owners of rental property. *See Novle v. Worthy*, D.C.App., 378 A.2d 674, 677 (1977); *Clarke v. O'Connor*, 140 U.S. App.D.C. 300, 305–07; 435 F.2d 104, 109–111 (1970). Accordingly, we conclude that if there is sufficient evidence tending to show a tenant (or a tenant's guest), by act or omission, unreasonably increased the exposure he or she otherwise would have had to danger created by a landlord's failure to comply with the Housing Regulations, the jury should be allowed to consider whether there was contributory negligence. *See* Restatement, *supra* § 466(a) & (b). No public policy would be frustrated.

■■■ We turn, therefore, to the facts. In the first place, the trial court did not err in declining to submit to the jury the question whether Eugene and Jude were contributorily negligent in remaining in the apartment and placing themselves under the cracked ceiling to move furniture away from the dripping water. Under the circumstances, this conduct can only be characterized as reasonable. In any event, when public policy bars a defendant from alleging that a plaintiff has assumed a risk, the very same conduct cannot give rise, through relabeling, to a defense of contributory negligence. *See Martin, supra* at 71–73; Restatement, *supra* §§ 483, 496F & Comment b. We have concluded that the policy underlying the Housing Regulations would be undermined if we were to permit

---

**6.** Housing Regulation § 2301 provides:

No owner, licensee, or tenant shall occupy or permit the occupancy of any habitation in violation of these regulations.

Although § 2301 prohibits occupancy by tenants, as well as by owners and licensees, of premises violating the Housing Regulations, that provision should not be held to authorize an assumption of risk defense requiring tenants

(and their guests) to choose, in effect, between relinquishing possession or risking loss of a valid claim for damages should harm befall them on the premises. *See Kanelos, supra* at 137–38, 406 F.2d at 955–56; *Panaroni v. Johnson*, 158 Conn. 92, 108–09, 256 A.2d 246, 256 (1969); *Conroy v. Briley*, 191 So.2d 601 (Fla. Dist.Ct.App.1966), *cert. denied*, 201 So.2d 231 (Fla.1967).

a landlord to argue that a tenant has "voluntarily" incurred a known risk by remaining in substandard premises and in taking steps (such as moving furniture from under the ceiling leak) to prevent potential injury. There is no room to convert the same facts to a defense of contributory negligence.[7]

██ We agree with appellant Scoggins, however, that the jury should have been allowed to consider whether the tenant, Eugene, was contributorily negligent in hanging plants from the ceiling (or in failing to remove plants she had hung there), thus proximately causing the injuries attributable to the cracking and falling plaster. *See Martin, supra* at 69. Scoggins testified that at least two plants were hanging from the living room ceiling, and that they were no longer there after the ceiling fell. He added that the plants "were hanging right near where the crack was, where the hairline crack was." Appellees themselves confirmed at trial that there was at least one plant hanging from the living room ceiling. In contrast with the policy permitting a tenant to remain in a substandard living room and to take reasonable steps to protect his or her property—for which there is no reasonable alternative—there is no public policy that would suggest barring the landlord from alleging a tenant's contributory negligence through unreasonable conduct which may have added to a dangerous condition. *See* Restatement, *supra* § 483.

██ We conclude that the testimony at trial provided a sufficient basis for Scoggins' counsel to confront the jury with the question whether the installation and

weight of the hanging plants proximately caused the damage to the ceiling (and then Eugene), and thus barred Eugene's claim. *See Aqui v. Isaac,* D.C.App., 342 A.2d 370 371–72 (1975); *Whetzel v. Jess Fisher Mgt. Co.,* 108 U.S.App.D.C. 385, 392, 282 F.2d 943, 950 (1960); *compare D. C. Transit System, Inc. v. Harris,* D.C.App., 284 A.2d 277, 279 (1971). Because Jude was not a tenant, however, and there is no allegation that he had control over the premises or any involvement in hanging the plants, the contributory negligence defense does not apply to his claim; the judgment in his favor must stand.

We accordingly affirm the judgment for Jude; we reverse and remand for a new trial on Eugene's claim.

*So ordered.*

---

**7.** In concluding that a tenant who remains in substandard housing does not do so voluntarily because there is presumed to be no reasonable alternative, the analysis of "voluntariness" (assumption of risk) and "reasonableness" (contributory negligence) are merged; *i. e.,* because remaining in the substandard apartment is involuntary, that conduct, in itself, cannot be unreasonable.

The United States Court of Appeals for the District of Columbia Circuit, in discussing contributory negligence in a similar context, has stated that the reasonableness of a tenant's remaining in substandard premises is usually a jury question. *See Whetzel v. Jess Fisher Mgt.*

*Co., supra* at 392, 282 F.2d at 950 (summary judgment for landlord reversed on tenant's suit for damages attributable to falling ceiling). Eight years later, however, the same court, in discussing assumption of risk, held that vacation or avoidance of substandard premises is not a reasonable alternative for a tenant. *See Kanelos, supra* at 138, 406 F.2d at 956. We conclude that the *Kanelos* analysis is more persuasive. Because, in this context, the voluntariness and reasonableness issues are the same, we are free to apply *Kanelos'* reasoning to the defense that appellees should have avoided the living room, whether it is called contributory negligence or assumption of risk.