*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 18-CV-191

MELANNE CIVIC, APPELLANT,

v.

SIGNATURE COLLISION CENTERS, LLC and H.P. WEST END, LLC, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-436-16)

(Hon. Hiram E. Puig-Lugo, Trial Judge)

(Argued October 8, 2019                    Decided December 19, 2019)

*Gregory S. Smith* for appellant. *Lawrence S. Lapidus* was on the brief for appellant.

*Harry J. Carleton* for appellee Signature Collision Centers, LLC.

*Charles L. Simmons, Jr.*, for appellee H.P. West End, LLC.

Before GLICKMAN, BECKWITH, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*:  Appellant Melanne Civic sued appellees Signature Collision Centers, LLC and H.P. West End, LLC, alleging that their negligence was responsible for injuries she suffered in a fall. A jury found that Signature and H.P. West End had been negligent, but that Ms. Civic's contributory

negligence barred her from recovering. Ms. Civic argues on appeal primarily that the trial court erroneously declined to instruct the jury on the issue of per se negligence. We affirm.

## I.

Except as indicated, the following facts appear to be undisputed. In February 2013, Ms. Civic fell on a "handicap ramp" while walking out of an automobile-repair shop operated by Signature and owned by H.P. West End. Ms. Civic testified that she fell because of an unmarked vertical and horizontal gap between a landing and the ramp. Ms. Civic introduced expert testimony that the vertical component of the gap was two to three inches and that the gap was inconsistent with the requirements of the District of Columbia Building Code. According to Ms. Civic's expert, the gap was unsafe and contrary to applicable standards of care.

The defense elicited testimony that Ms. Civic had previously gone in and out of the repair shop, that she did not recall whether she was using the handrail when she fell, and that she was carrying a boot and a cell phone when she fell.

Ms. Civic asked the trial court to instruct the jury that if the jury found that Signature and H.P. West End violated D.C. Building Code § 1003.6, then the jury was required to find that Signature and H.P. West End were negligent. At the time of the incident at issue, § 1003.6 required among other things that a path of egress consist of a "continuous unobstructed path of vertical and horizontal egress travel."

The trial court declined to give the requested instruction. The trial court did, however, give an instruction that if the jury found that Signature and H.P. West End violated § 1003.6, the jury could consider that violation as evidence of negligence. Relatedly, the trial court instructed the jury, over Ms. Civic's objection, that if the jury found that Ms. Civic's negligence was a proximate cause of her injuries, the jury could not find Signature and H.P. West End liable.

## II.

Ms. Civic's principal challenge is to the jury instructions. Whether the jury instructions were accurate is a question of law that we decide de novo. *Washington Inv. Partners of Del., LLC v. Sec. House, K.S.C.C.*, 28 A.3d 566, 577 (D.C. 2011). We find no error.

"In the District of Columbia, a plaintiff in a negligence action generally cannot recover when [the plaintiff] is found contributorily negligent." *Washington Metro. Area Trans. Auth. v. Young*, 731 A.2d 389, 394 (D.C. 1999). That bar on recovery does not apply, however, if the plaintiff can show that the defendant's conduct violated a statute or regulation intended to give "classes of persons likely to be careless . . . greater protection than that which might be afforded at common law." *Martin v. George Hyman Constr. Co.*, 395 A.2d 63, 69 (D.C. 1978). We have often referred to the latter principle as the doctrine of "negligence per se." *E.g.*, *District of Columbia v. Mitchell*, 533 A.2d 629, 639 (D.C. 1987). A plaintiff may rely on that doctrine only if the plaintiff "is a member of the class to be protected by the statute." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014).

To the extent that § 1003.6 is viewed as merely part of the general Building Code, we do not see any basis upon which to conclude that § 1003.6 was intended to provide a class of unusually vulnerable persons with heightened protections. *See, e.g.*, *Phillips v. Fujitec Am., Inc.*, 3 A.3d 324, 330 n.17 (D.C. 2010) ("Regardless, the contention that the building code imposes a higher duty (amounting to negligence *per se*) on appellees is wrong. We have held that such regulations only impose a standard of reasonable care, or, more accurately, they serve to indicate what the standard of reasonable care might be. We agree that the appellees owed a duty of

reasonable care to Ms. Phillips, but her own conduct, from which no reasonable juror could find that she was not contributorily negligent, still bars recovery.") (citations omitted); *District of Columbia v. Brown*, 589 A.2d 384, 386 (D.C. 1991) (although Elevator Code had purpose of ensuring safety of general public, Elevator Code was not intended to protect persons from their own negligence, and violation of Elevator Code therefore did not support theory of per se negligence). The trial court thus correctly declined to instruct the jury on per se negligence in the circumstances of this case.

We do wish to clarify two points. First, there is some indication that § 1003.6 may relate to fire-code provisions or might be understood as directed at providing protections for persons with disabilities. The current case does not involve a plaintiff with a disability or who was fleeing from or responding to a fire or other emergency, and we express no view about the applicability of the doctrine of per se negligence in such cases. Second, the broad language in cases such as *Phillips* should not be understood to categorically foreclose the possibility that a provision in a building or housing code could provide a predicate for an instruction as to per se negligence. To the contrary, this court has held that, in at least some circumstances, provisions of the Housing Code would provide a predicate for application of the principle of per se negligence. *See Scoggins v. Jude*, 419 A.2d 999, 1005-06 (D.C. 1980) (policy

underlying Housing Code generally precludes landlord from relying on contributory negligence based on theory that tenants or guests should not have remained in premises or should have repaired premises themselves).

Ms. Civic's arguments do not persuade us that the trial court in this case was required to give an instruction on per se negligence. First, Ms. Civic relies on the following language from our decision in *Ceco Corp. v. Coleman*, 441 A.2d 940, 946 (D.C. 1982) (internal quotation marks omitted):

> The general rule in this jurisdiction is that "where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish [the plaintiff's] relationship to the statute, unexplained violation of that standard renders the defendant negligent as a matter of law.

Considered in isolation, that language would seem to make the doctrine of per se negligence applicable to all statutes or regulations that have a public-safety purpose. As we have already explained, however, *supra* at 4-5, the analysis in and holdings of our prior and subsequent cases make clear that the doctrine is not so sweeping, at least in the context of contributory negligence. Rather, we have found statutes or regulations to be a basis for lifting the contributory-negligence bar when those statutes or regulations were directed at "protect[ing] persons from their own negligence." *Brown*, 589 A.2d at 387.

Second, Ms. Civic relies heavily on our decision in *Scoggins*, 419 A.2d 999. Specifically, Ms. Civic reads that decision as standing for the proposition that violations of the Housing Code are generally per se negligent, thus lifting the contributory-negligence bar, unless the plaintiff engaged in "unreasonable conduct which may have added to a dangerous condition." *Id.* at 1006. Ms. Civic's reading of *Scoggins* runs headlong into our decisions in *Phillips* and *Brown*, which rejected the idea that violations of building and elevator codes are generally per se negligent. *Phillips*, 3 A.3d at 330 n.17; *Brown*, 589 A.2d at 386.

In any event, we do not share Ms. Civic's interpretation of *Scoggins*. *Scoggins* held that, in general, "the Housing Regulations impose only a duty of reasonable care upon owners of rental property." 419 A.2d at 1005. We thus further held that contributory negligence is generally a defense to a claim of negligence resting on a violation of the Housing Regulations. *Id.* ("[I]f there is sufficient evidence tending to show a tenant (or a tenant's guest), by act or omission, unreasonably increased the exposure he or she otherwise would have had to danger created by a landlord's failure to comply with the Housing Regulations, the jury should be allowed to consider whether there was contributory negligence. No public policy would be frustrated.") (citation omitted). We identified an exception to the latter principle,

however: landlords generally are not permitted to base a claim of contributory negligence on the conduct of a tenant or guest in simply using the premises or failing to themselves repair the premises, because such defense would "undermine the public policy implicit in the Housing Regulations." *Id.* at 1004-05. Applying these principles, we held that the trial court properly declined to instruct the jury on the theory that the tenant and guest in the case were contributorily negligent by simply remaining in and moving about the apartment even though there was a crack in the apartment's ceiling. *Id.* at 1005-06. Finally, we held that the jury ought to have been allowed to consider whether the tenant was contributorily negligent by hanging plants in the ceiling (or failing to remove the plants), which may have caused the apartment's ceiling to collapse. *Id.* at 1006. On the last point, we explained that

> In contrast with the policy permitting a tenant to remain in a substandard living room and to take reasonable steps to protect his or her property–for which there is no reasonable alternative–there is no public policy that would suggest barring the landlord from alleging a tenant's contributory negligence through unreasonable conduct which may have added to a dangerous condition.

*Id.*

In sum, *Scoggins* is entirely consistent with our conclusion in this case that violations of the Building Code generally do not amount to per se negligence barring the defense of contributory negligence.

Third, Ms. Civic relies on a federal decision, *Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686 (D.C. Cir. 1987). *Perkinson* does support Ms. Civic's position. In that case, the D.C. Circuit held that it was per se negligence to violate the Building Code by failing to put a non-slip surface on stairs. *Id.* at 692. In reaching that conclusion, the D.C. Circuit relied on the previously cited broad language in our decision in *Ceco*, 441 A.2d at 945. *Perkinson*, 821 F.2d at 692. *Perkinson* is not binding on this court. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) (decisions of D.C. Circuit after February 1, 1971, are not binding on D.C. Court of Appeals); *see also, e.g.*, *Church of Scientology v. Foley*, 640 F.2d 1335, n.63 (D.C. Cir. 1981) (en banc) (D.C. Court of Appeals, not D.C. Circuit, is "the final expositor of local law") (internal quotation marks omitted). Moreover, *Perkinson* was decided in 1987, before decisions such as *Phillips* and *Brown* clearly established that violations of general codes, such as the Building Code and the Elevator Code, do not generally constitute per se negligence. In sum, we are bound to follow our subsequent decisions, rather than *Perkinson*. *M.A.P.*, 285 A.2d at 312 (divisions of court are bound by prior decisions of court).

Finally, Ms. Civic relies on a second provision -- American National Standards Institute (ANSI) A117.1 -- that apparently sets additional requirements for safe walkways. According to Ms. Civic, that provision was adopted as part of

the District's Building Code, and the trial court erroneously barred Ms. Civic's expert from testifying to the jury about the provision.  To the extent that Ms. Civic's argument is directed at the idea that the jury was erroneously deprived of information that would have been relevant to whether Signature and H.P. West End were negligent, any error was harmless, because the jury in any event found that Signature and H.P. West End were negligent.  *See, e.g.*, *Knight v. Georgetown Univ.*, 725 A.2d 472, 479 n.7 (D.C. 1999) (error harmless where court could say with fair assurance that error did not substantially sway jury's verdict).  It is not clear whether Ms. Civic is also relying on ANSI A117.1 as a basis upon which the trial court ought to have instructed the jury about per se negligence.  If so, ANSI A117.1 would not have provided such a basis in the circumstances of this case, for the reasons stated above with respect to § 1003.6 of the Building Code.

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*