Michael SANDERS et al., Plaintiffs-Appellees and Cross-Appellants,

v.

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, AFL–CIO, Defendant-Appellant and Cross-Appellee.

Nos. 76–1450, 76–1556.

United States Court of Appeals, Tenth Circuit.

Dec. 29, 1976.

---

Robert J. Reinhold, Topeka, Kan., for plaintiffs-appellees and cross-appellants.

Robert L. Uhlig, Kansas City, Kan. (Blake, Uhlig & Funk, Kansas City, Kan., on the brief), for defendant-appellant and cross-appellee.

Before SETH, HOLLOWAY and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This action was brought by individual members of Shopmen's Local No. 582 against the International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO to terminate the trusteeship imposed by the International Union on Local No. 582. Jurisdiction is based on 29 U.S.C. § 464. The trial court, sitting without a jury, enjoined the International Union from continuing the trusteeship on the ground that the evidence failed to show that the imposition of the trusteeship on the Local by the General Executive Board of the International had been thereafter ratified by the General Executive Council of the International within 30 days of the imposition of the trusteeship as required by Article XII, section 7 of the International's constitution. The International appeals the judgment entered, and the Local cross appeals.

Section 462 of 29 U.S.C. provides, in part, that trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and by-laws of the organization which has assumed trusteeship over the subordinate body. Article XII, section 7 of the International's constitution provides that the General Executive Board shall have the power to place any local union or subordinate body under direct International supervision whenever in its judgment such action is necessary for certain specified purposes; "provided that such action shall be taken by the unanimous vote of the General Executive Board and *provided further that where such action is taken by the said Board the same shall be effective only for thirty (30) days unless ratified by the General Executive Council.*" (Emphasis added.)

Under the International's constitution the General Executive Council consists of the General President, nine General Vice Presidents, the General Secretary, and the General Treasurer. The General Executive Board consists of the General President, the General Secretary, and a General Officer selected by the General President.

The Local had a collective bargaining agreement with Kansas City Structural Steel Company, which provided, in part, that the Company would not engage in any lockout and that neither the Local nor its members individually or collectively would cause, permit, or take part in any strike or picketing. On Friday, July 18, 1975, an employee was accidentally killed on the job. This was the third death in a six-month period. Additionally, the Company had been issued numerous citations for unsafe working conditions. Understandably there was considerable discussion among the employees concerning plant safety.

On Monday, July 21, 1975, when the employers reported for work, the president of the Local attempted to present a list of grievances to the Company's plant manager concerning safety matters. The plant manager refused to accept the list. The Local then held a meeting and voted to walk out. Picketing and leafletting followed. The walkout was without the permission of the International's President. On July 23, 1975, the President of the International ordered the President of the Local to in turn order the members back to work and to process any grievances in accordance with the collective bargaining agreement. The Local President read the letter from the International's President to the members, but did not order them back to work. The members again voted not to go back to work. On August 1, 1975, the members voted to return to work and did so only when they

were assured by the Company that they would not have to work under unsafe conditions. Subsequent to the return to work, the Local voted to pay those employees who had picketed $1.00 per hour, and to pay $50.00 per week to certain employees who had been discharged or suspended. As the result of arbitration, those thus discharged or suspended were later reinstated.

On August 19, 1975, the International imposed a trusteeship on the Local, citing various grounds therefor, such as the illegality of the walkout, improper disbursement of Local funds, holding of special meetings without permission, and the like. The present action was then brought on August 22, 1975, seeking a termination of the trusteeship.

Perhaps the main thrust of the complaint was that even though there was a no-strike clause in the collective bargaining agreement, the members' walkout was lawful under 29 U.S.C. § 143. That statute provides as follows:

Nothing in this chapter shall be construed to require an individual employee to render labor or service without his consent, nor shall anything in this chapter be construed to make the quitting of his labor by an individual employee an illegal act; nor shall any court issue any process to compel the performance by an individual employee of such labor or service, without his consent; nor shall the quitting of labor by an employee or employees in good faith because of abnormally dangerous conditions for work at the place of employment of such employee or employees be deemed a strike under this chapter.

Plaintiffs also alleged in their complaint as additional grounds for termination of the trusteeship that the walkout was justified because the Company violated grievance procedures; that the imposition of the trusteeship was in bad faith, violated certain labor statutes, and was for a purpose not permitted by statute or by the International's constitution; and that there was no full and fair hearing to determine the propriety of the trusteeship as required by the consti-

tution of the International. The trial court rejected *all* of these contentions, ruling that § 143 does not justify a general walkout, that the trusteeship was imposed in good faith and for a permissible purpose, and that the Local was afforded a full and fair hearing. The trial court, however, enjoined continuation of the trusteeship on the *sole* ground that it was effective for only 30 days because the Executive Board's action was not ratified by the Executive Council as required by the International's constitution.

■ The position of the International on appeal is that the question of ratification, or lack of such, by the General Executive Council within 30 days after the imposition of the trusteeship by the General Executive Board was not one of the issues set forth in the pretrial order and was injected into the proceedings by the trial judge only after the case had been submitted to him. Trial of this matter was held on February 23 and 24, 1975, and judgment was not entered until May 17, 1975. During the period of time the trial judge had the case under advisement the judge apparently conferred with counsel on several occasions at which time, among other things, the possibility of settlement was discussed. At one of these meetings the trial judge indicated that he had grave doubts about the continued legality of the trusteeship because of the failure of the General Executive Council to ratify within 30 days the prior imposition of the trusteeship by the General Executive Board. With this turn of events, the International filed a motion to set aside the submission of the case and to reopen it to take evidence bearing on the issue of ratification. Attached to the motion was an affidavit of the International's President. This request to reopen was denied, and the trial court thereafter by formal findings, conclusions, and judgment enjoined a continuation of the trusteeship *solely* for the failure to comply with the ratification provisions contained in the International's constitution. On appeal the International asserts that under the circumstances the trial court abused its discretion in refusing to reopen the case. We agree.

Our perusal of the pretrial order does not disclose that lack of ratification by the General Executive Council of the action of the General Executive Board placing the Local under trusteeship was an issue in the case. Certainly there is no specific reference thereto. It is true that in the overall the plaintiffs were challenging the "continuing lawfulness" of the trusteeship, but that is hardly sufficient to put the parties on notice that the plaintiffs were relying on lack of ratification by the Council as one ground for termination of the trusteeship. During the trial, it is said, one of the International's exhibits made reference to ratification. Such may well be correct. However, it would appear that it was not until the case had been submitted and the trial judge had the matter under advisement that for the first time it became clear to all that the trial judge was seriously concerned about this particular phase of the case. It was in such circumstance that the International sought to reopen the case and be allowed to offer evidence on this particular matter, suggesting, by affidavit, that there had in fact been ratification. The trial court denied this request and thereafter made findings and conclusions which rejected every ground advanced by the plaintiffs for termination of the trusteeship, but then ruled for the plaintiffs on the one ground that there was lack of ratification. If the trial court was going to turn the entire case on lack of ratification it would seem better practice to permit the parties the opportunity to fully develop the evidence relating thereto. In declining to let the parties so do, we feel the trial court abused its discretion.

■ In support of the general proposition that a motion to reopen a case after submission is addressed to the sound discretion of the trial court, see, for example, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Nichols v. United States*, 460 F.2d 671 (10th Cir.), *cert. denied*, 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972); and *Sta-Rite Industries, Inc. v. Johnson*, 453 F.2d 1192, 1194 n. 1 (10th Cir. 1971), *cert. denied*, 406 U.S. 958, 92 S.Ct. 2062, 32 L.Ed.2d 344 (1972). A case

somewhat analogous to the present one is *Kanelos v. Kettler*, 132 U.S.App.D.C. 133, 406 F.2d 951 (1968). There the defendant did not affirmatively plead assumption of risk nor was such mentioned in the pretrial order. At the conclusion of the plaintiff's case the defendant moved for a directed verdict on the ground that the plaintiff had failed to make out a prima facie case of negligence. The trial court granted the motion for a directed verdict on the ground that the plaintiff had assumed the risk of injury. On appeal the judgment was reversed and remanded for a new trial. Regarding the trial court's disposing of a case on a ground not urged in the pleadings or pretrial order, the Circuit Court in a footnote commented at page 954 as follows:

Courts must, of course, conform their rulings to the law as they see it, irrespective of the deviating views and litigating courses of counsel. But this is not to say that a court may raise for the first time and simultaneously rule on a new point which the losing party has had no occasion to address with evidence. We suggest that in any comparable situation arising hereafter, the court should afford the party against whom the verdict is sought an opportunity to reopen the evidence before the ruling becomes irrevocable.

■ By its cross appeal the plaintiffs argue that even if the trial court erred in refusing to reopen the case and receive evidence bearing on the ratification issue, the trial court also erred in rejecting the other grounds for relief which were relied on by the plaintiffs. In other words, the plaintiffs by their cross appeal urge that we affirm the judgment on grounds other than the one ground relied on by the trial court. For several reasons we are disinclined to consider in this proceeding the matters urged by cross appeal. In the first place, such have not in our view been fully briefed in this Court. Additionally, depending on the ultimate resolution of the ratification issue, we may never need to reach the issues sought to be raised in the cross appeal. In such circumstance we prefer to remand

this case to the trial court with directions that it reopen the case and receive whatever evidence either of the parties may have on the ratification issue and then render appropriate judgment. In so doing, we believe we are placing first things first.

By this opinion we do not wish to be considered as having given any indication that there was, or was not, ratification. We are simply holding that if the trial court is going to resolve this dispute on that one narrow issue, the matter should be fully explored by the trial court before judgment.

Judgment reversed and case remanded for further proceedings consonant with the views herein expressed.