OPINION OF THE COURT
Gerard M. Weisberg, J.
Freeman Check Cashing Inc. (Freeman), a licensed casher of checks pursuant to article 9-A of the Banking Law, brings suit as the alleged holder of nine unemployment insurance checks issued by the State of New York. Each check was negotiated to claimant for its face value less a service charge, and bears the indorsement in blank of U. A. Rodriguez, the payee. The State has refused to honor the checks upon the theory that the indorsements are forgeries.
Subdivision (1) of section 3-307 of the Uniform Commercial Code provides in relevant part that the burden of establishing the effectiveness of a disputed signature is on the party seeking to enforce it. The alleged holder is aided, however, by a statutory presumption in favor of its genuineness which did not exist at common law. (Donahue v Bank of Amer., 161 NYS 232.) "Presumption” as defined by subdivision (31) of section 1-201 of the Uniform Commercial Code means that: "the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its non-existence.”
The effect of this definition is to create a rebuttable presumption: the adversary possesses the burden of coming forward with evidence to overcome it, but once this occurs, the presumption disappears. (People v Langan, 303 NY 474; Matter of Magna v Hegeman Harris Co., 258 NY 82.) In this respect it is to be contrasted with those presumptions which continue to the end of trial, e.g., the presumption of innocence. (Cf. Eazor Express v Lanza, 60 Misc 2d 686.)
The critical issue is: what quantum of evidence is necessary to overcome the presumption of genuineness? "Substantial evidence” is the test frequently applied to other rebuttable presumptions. (Thompson v Wallin, 301 NY 476, dsmd 342 US 801; Piwowarski v Cornwell, 273 NY 226.) However, the framers of the Uniform Commercial Code did not use the term "substantial” and, consequently, there is no reason to believe that such a test was intended. (Cf. Richardson, Evidence [Prince, 10th ed], § 58.) In this connection, the official com *821 ment to section 3-307 of the Uniform Commercial Code states in part: "[defendant’s] evidence need not be sufficient to require a directed verdict in his favor, but it must be enough to support his denial by permitting a finding in his favor.” (McKinney’s Cons Laws of NY, Book 62 Vz, Part 2, p 211.)
This language suggests that the question is less one of quantity than of "legal sufficiency” as that term is used in connection with determining whether a prima facie case has been established. The question is not "how much” evidence, but whether some evidence has been adduced upon each and every element of a cause of action or defense. Forgery does not function as a true affirmative defense since the holder has the ultimate burden of proof. However, it does contain several logically independent elements which are normally proven either by testimony of a qualified expert or by a witness to the execution of the indorsement. (Boyd v Wyman, 39 AD2d 874.) We consider that the presumption is overcome when some evidence is introduced tending to prove each and every necessary element of forgery. The proof need not, however, possess any particular degree of "substantiality”, persuasiveness or weight, since such tests are essentially subjective.
Based upon this analysis, the court must proceed to a consideration of the sole issue in the case, to wit: whether the presumption of genuineness was overcome. Upon this subject, there was testimony by Ms. Robin Greenstein, formerly employed by the New York State Department of Labor as a claims examiner, that on September 7, 1976 she interviewed an individual not personally known to her in connection with a claim of forgery. The substance of the conversation was entered upon a form to which the signature "Ulysses A. Rodriguez” was affixed by the interviewee in Ms. Greenstein’s presence. This form was placed in evidence over claimant’s objection. Ms. Greenstein stated that the signatures on the checks had been compared with various unidentified documents in the possession of the Department of Labor. The court was not afforded the opportunity to compare the signatures on the checks with these documents since they were not placed in evidence. Neither did the State produce the individual claimed by it to be the real U. A. Rodriguez,* or anyone personally claiming to know U. A. Rodriguez.
*822 In order to overcome the presumption of genuineness, the State was required to produce firsthand proof as to any claim of forgery. (622 West 113th St. Corp. v Chemical Bank N. Y. Trust Co., 52 Misc 2d 444, 446.) Neither Ms. Greenstein’s testimony, purporting to relate her conversation with the supposed payee, nor the statements contained on the interview form qualify as firsthand proof. To the contrary, this evidence was pure hearsay and was not admitted for its truth, but rather on the issue of notice to the State of the alleged forgeries, and in the case of the form, as a possible handwriting exemplar. Ms. Greenstein was not, however, a qualified expert on handwriting and any supposed comparison of signatures by her was not competent evidence. (McKay v Lasher, 42 Hun 270; Boyd v Wyman, 39 AD2d 874, 875, supra; cf. Matter of Spytco, 50 AD2d 645.)
Comparison of signatures by the court, pursuant to CPLR 4536 was precluded by the State’s failure to produce "any writing proved * * * to be the handwriting of the person claimed to have made the disputed writing”. None of the signatures admitted into evidence was proved to be the authentic signature of the U. A. Rodriguez to whom the checks were issued, since, as previously indicated, Ms. Greenstein did not personally know the interviewee, and the documents allegedly forming the basis of her comparison were not placed in evidence. (Cf. Matter of Gonzalez v Dumpson, 46 AD2d 861.) Consequently, although the signatures on the checks and the signature on the interview form are quite different, they bear equal claims to authenticity and, therefore, do not constitute evidence of forgery.
Ironically, evidence produced by claimant purporting to prove the genuineness of the indorsements nearly overcame the presumption. Claimant produced two signature cards, one belonging to Freeman and the other to Saratoga Check Cashing (Saratoga), claimant’s affiliate. The Freeman card, dated June 1, 1976, is signed "U. A. Rodriguez”, in a handwriting which to the court appears similar to that visible on the checks. This card also lists a Social Security number and contains the words "Be Careful” and "Get I.D.” The Saratoga card, dated April 29, 1975, is signed "Ulysses A. Rodriguez” in a handwriting which looks similar to that appearing on the Department of Labor interview form provided by Ms. Green-stein. Of particular interest is the fact that although the Freeman and Saratoga cards apparently contain different *823 handwritings and the signatures are different in form, the Social Security numbers listed are identical.
These are suspicious circumstances, though similarly insufficient as legal evidence of forgery because neither signature card is provably that of the U. A. Rodriguez to whom the checks were issued. The court is, however, concerned with claimant’s apparent failure to observe precautionary measures to verify the identity of its customers or to cross-check its signature cards. Although the presumption of genuineness has the salutary effect of facilitating the free negotiability of commercial paper, it to some degree protects the check cash-er’s carelessness at the expense of the drawer — in this case the State and, therefore, ultimately the taxpayer. The presumption’s rationale as indicated by the official comment to section 3-307 of the Uniform Commercial Code is in part that: "in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of the defendant or more accessible to him.” (McKinney’s Cons Law of NY, Book 62Vi, Part 2, p 211.)
Whatever may be the prevailing situation in the commercial world, forgery of government issued checks is not an uncommon experience. Moreover, government benefit checks are perforce issued on an impersonal basis, frequently by computers, and consequently the payee is unlikely to be within the drawer’s control or be personally known by any person in the governmental bureaucracy. Consequently, the factual assumptions made in the official comment may not accurately reflect a true state of affairs.
On the other hand, the State did not exercise those opportunities for self-protection which were available to it. Apparently, it did not possess properly maintained records containing an authentic signature of U. A. Rodriguez with which to prove the forgery.
It is not, however, the court’s function to prescribe the methods by which check cashers or government agencies conduct their affairs. The question before us is simply whether the presumption of genuineness was overcome. We hold that it was not. Accordingly, claimant is awarded the sum of $603 plus interest from October 19, 1976, representing the date upon which claimant’s bank account was debited owing to the State’s dishonor of the checks in question.
Let judgment be entered accordingly.

 No unfavorable inference has been drawn from this fact since it does not appear that U. A. Rodriguez was within the State’s control. (Reehil v Fraas, 129 App Div 563.)