**UNITED STATES of America, Appellee,**

v.

**65.0 ACRES OF LAND, MORE OR LESS, SITUATED IN WASATCH COUNTY, STATE OF UTAH, and Wash-Mar Investment Co., et al., Appellants.**

**No. 82–1707.**

United States Court of Appeals,
Tenth Circuit.

Feb. 14, 1984.

Glen E. Fuller, Salt Lake City, Utah, for appellants.

Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., Brent D. Ward, U.S. Atty., and Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, Utah, Jacques B. Gelin and Albert M. Ferlo, Jr., Attys., Dept. of Justice, Washington, D.C., for appellee.

1. $125.00 per acre (580 acres).

2. $50.00 per acre (65 acres).

Before McKAY, LOGAN and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

The owner of sixty-five acres of land condemned by the government appeals the trial court's valuation of that land and its determination of the interest rate to be applied to the unpaid balance.

In 1963 the owner purchased 580 acres of land near Strawberry Reservoir in Wasatch County, Utah. In 1968 the government filed a Declaration of Taking for 515 of the 580 acres. At trial in 1971, the government argued that the compensation due the owner for the 515 acres had to be reduced by the enhanced value of the remaining 65 acres. That argument was advanced despite the government's knowledge that 32.5 of the remaining 65 acres would subsequently be condemned as indicated in a project map published in 1968.

Notwithstanding the government's argument, the jury returned the following verdict:

We, the jury, impaneled in the above-entitled cause, find the issues of Just Compensation in favor of the Defendant landowners and assess the same as follows:

WASH–MAR PROPERTY

| | |
|---|---|
| (a) Fair market value of property of Wash-Mar BEFORE condemnation, 580 acres. | $72,500.00 [1] |
| (b) Fair market value of remainder property of Wash-Mar AFTER condemnation, 65 acres. | $ 3,250.00 [2] |
| JUST COMPENSATION (Difference between BEFORE Value and AFTER Value) | $69,250.00 [3] |

3. $134.47 per acre (515 acres).

Record, vol. 3, Government Exhibit 12 (footnotes added). The jury assigned a value to the remaining 65 acres that was lower than the value of the land condemned. That valuation resulted in a final award per acre greater than the assigned value per acre of either the 580 or 65 acres.

In 1975 the government approached the owner to acquire the remaining 32.5 acres that were included in the 1968 project map but not previously condemned. During those negotiations the government agreed to acquire all of the land left in the owner's possession—an additional 32.5 acres—because the owner would otherwise be left with an uneconomic remainder. The owner and the government, however, were unable to reach an agreement as to the valuation of the land. Thus, in 1979 the government again initiated condemnation proceedings.

Much of that trial focused on the question of whether the owner should be compensated on the basis of the value of the land enhanced by the reservoir. The court held that because 32.5 acres were part of the original project *United States v. Miller,* 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), mandates that those acres be valued as if the reservoir was not adjacent to the land. The remaining 32.5 acres were valued at the higher enhanced value. The court found that the acres were worth $1,800.00 and $3,600.00 per acre respectively—the amounts advanced by the government's expert witness. Judgment was entered and interest assessed on the unpaid balance at the statutory rate of six percent per annum.

The owner argues that the trial court erred in not granting compensation for the entire 65 acres on the basis of its enhanced value. First, the owner argues that *United States v. Miller,* 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), does not apply.

In *Miller* the Supreme Court stated:

If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date,

determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities.

*Id.* at 376–77, 63 S.Ct. at 281.

The owner asserts *Miller* does not apply because the 32.5 acres were not within the scope of the project. The trial court's finding that the 32.5 acres were clearly included in the 1968 project map published by the Bureau of Reclamation is supported by the testimony at trial. Record, vol. 2, at 115–18. Thus, the trial court did not err in holding that the 32.5 acres were part of the original project prior to the condemnation proceedings in 1971.

■ The owner, relying on our recent decision in *United States v. 49.01 Acres of Land,* 669 F.2d 1364 (10th Cir.1982), asserts that even if the 32.5 acres were within the scope of the project in 1968, subsequent government actions now preclude the appli-

cation of *Miller.* In *49.01 Acres,* we held that

> the government need not pay [the] enhanced value unless (1) the property was not within the original scope of the project; or (2) the government failed to provide the public with adequate notice of the project's scope; or (3) the landowner reasonably believed that subsequent government action removed the property from the project's scope. If the landowner can prove any of these three situations exist, upon condemnation the government must pay the enhanced value.

*Id.* at 1367 (citations omitted).

As discussed previously, the 32.5 acres were part of the project in 1968 and notice of the scope of the project was given by the publication of the 1968 map. Accordingly, to avoid the application of *Miller* the owner must establish that subsequent government actions lead the owner to reasonably believe that the 32.5 acres had been removed from the project's scope.

The owner contends that two specific acts by the government took the 32.5 acres out of the scope of the project. First, the owner argues that the government's failure to condemn the 32.5 acres when it condemned the previous 515 acres was such an act. This argument is meritless. One of the basic premises underlying *Miller* and its progeny is that the government should not, could not, be expected to condemn all of the land needed for a particular project at the same time. The testimony at trial was that the government did not condemn the 32.5 acres when it condemned the 515 acres because of insufficient funds. As a matter of law such actions in and of themselves do not remove land from the scope of a project.

The owner's second contention is that the government removed the 32.5 acres from the scope of the project by arguing at the original condemnation proceeding that the enhanced value of the 32.5 acres had to be subtracted from the value of the 515 acres.

If the government had been successful in advancing that position, the owner might have a valid point. But, as the trial court found, the jury in the original proceeding did not enhance the value of the 32.5 acres but in fact assigned the land a lower value than the condemned land.[4] Under these circumstances we cannot say that the finding of the trial court—that the land was not removed from the scope of the project—was clearly erroneous.

■ The owner also argues that the trial court erred in its valuation of the land. The trial court adopted the valuation figures of the government's expert. The court's valuation is not clearly erroneous and there is substantial evidence to support it.

■ Finally, the owner alleges that the trial court erred in denying its motion to reopen the trial to take evidence of market interest rates. "[A] motion to reopen a case after submission is addressed to the sound discretion of the trial court." *Sanders v. International Association of Bridge, Structural and Ornamental Iron Workers,* 546 F.2d 879, 882 (10th Cir.1976).

On January 13, 1982, the trial court mailed to the parties its memorandum opinion. Two weeks later the court entered judgment. A week after that the owner for the first time sought to introduce evidence of market interest rates and argue that interest at a rate of six percent per annum constituted a taking of property when market interest rates during the same period averaged fifteen percent per annum.

Under these circumstances we cannot say that the trial court abused its discretion in denying the owner's motion to reopen the trial for additional evidence.

The decision of the trial court is AFFIRMED.

---

**4.** The jury's determination of the "enhanced value" for the remaining 65 acres was considerably lower than any of the testimony offered at trial and was less than one-half the value per acre assigned the condemned land.