**BRADFORD TRUST COMPANY OF BOSTON, Plaintiff-Appellant,**

v.

**MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., Defendant-Appellee.**

**No. 73, Docket 85–9045.**

United States Court of Appeals, Second Circuit.

Argued Aug. 28, 1986.

Decided Nov. 5, 1986.

Christopher J. Collins, New York City (Louis J. Maione, New York City, of counsel), for plaintiff-appellant.

William T. Marshall, Jr., New York City (Sullivan Marshall & McKeegan, New York City, of counsel), for defendant-appellee.

Before CARDAMONE, PIERCE and AL-TIMARI, Circuit Judges.

CARDAMONE, Circuit Judge:

Appellant, the Bradford Trust Company of Boston (Bradford), the servicing agent for a group of mutual funds known as the Massachusetts Funds, liquidated two of its clients' holdings and remitted the proceeds pursuant to what it thought were its clients' instructions. It appeared later that appellant had been duped and the signatures on the instructions and documents forwarded were forgeries, even though they had allegedly been guaranteed by appellee, Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch). After making whole the clients' accounts at a cost of 200,000 dollars, appellant—with perhaps good reason—believed that since appellee had guaranteed the forged signatures, Merrill Lynch would pull Bradford's chestnuts out of the fire. When Merrill Lynch—scarcely a cat's-paw in the circumstances of this case—balked at paying, Bradford commenced the instant litigation in the United States District Court for the Southern District of New York (Sprizzo, J.), claiming breach of warranty and negligence against Merrill Lynch arising from its guarantee of the signatures of the "clients". The district court found for Merrill Lynch. *Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.Supp. 208 (S.D.N.Y.1985). We affirm.

## BACKGROUND

We set forth the facts briefly. Stanley E. and Marjorie P. Allen (Allens), owned shares in two mutual funds administered by Bradford. In November, 1979 Bradford received an undated letter purportedly from the Allens, who were then residents of Palma de Mallorca (Baleares), Spain, instructing it to liquidate the two funds and remit the proceeds to a new address in Geneva, Switzerland. The instruction letter was accompanied by an undated blank stock power, also purportedly signed by the Allens and stamped with a signature guarantee stamp of Merrill Lynch, which was endorsed by a Merrill Lynch employee, David P. Kleber. Bradford sequentially numbered and microfilmed the two documents when it processed them but it made no effort to verify the requested change of address or the signatures on the letter and the stock power. Nor did Bradford compare the Allens' signatures with the several specimens of their handwriting that it had in its files.

Within days the Allens' accounts were liquidated and Bradford issued two checks payable to the Allens for nearly $200,000, which it forwarded to the Swiss address. After some delay brought about by the loss of the original checks, Bradford paid them on January 8, 1980. Two weeks later, it received a letter from the Allens with instructions to reinvest all the dividends of the two accounts. Realizing that there was a problem, Bradford then compared the endorsements on the remittance checks against the Allens' signatures in its file and began discussions with the Allens to determine whether the original request had been a forgery. The Allens later executed affidavits of forgery stating that they had never received the two checks endorsed with their purported signatures. In September, 1980 Bradford reimbursed the Allens' accounts in the amount of $212,154.01 and then sued Merrill Lynch.

## PROCEEDINGS

Judge Sprizzo held a short bench trial on January 6, 1983 in order to receive submissions by the parties; no live witness testimony was offered. Three years later, the district judge issued his opinion finding that Bradford had failed to establish its case against Merrill Lynch because it had not proved that (1) the signatures at issue were forgeries, (2) Merrill Lynch's alleged signature guarantee stamp was valid and genuine, and (3) Bradford relied reasonably upon the blank stock power. We outline each holding in turn.

First, the district court concluded that Bradford had failed to establish that the Allens' signatures on the stock power accompanying the liquidation instructions had been forged. At the 1983 bench conference, the court had inquired whether Bradford was going to introduce any testimony by the Allens that their signatures were forged, warning Bradford that, by relying simply on their affidavit of forgery, its case was "very thin." Counsel for Bradford responded, "We stipulated to that fact," to which counsel for Merrill Lynch answered, "We do not."

In a post-trial memo Bradford contended that it had been taken by surprise at trial by Merrill Lynch's assertion that the signatures on the stock power had not been forged, and requested either that the case be reopened to enable it to offer proof of the forgery or that the pre-trial order be amended to reflect, as an undisputed fact, that a forgery had occurred. The district court denied what it labeled Bradford's "belated" request to reopen or amend the pre-trial order. It found that the forgery was set forth as a disputed issue in the pre-trial order and, in the alternative, that Bradford's failure to object or contradict opposing counsel's denial of the stipulation allowed the trial court to consider the issue. Judgment was therefore granted in favor of Merrill Lynch on the ground that Bradford had failed to establish that the Allens' signatures on the stock power were forged.

The trial court also found that Bradford had failed to establish the validity of the signature of David P. Kleber, the Merrill Lynch employee who purportedly endorsed

the Merrill Lynch signature guarantee on the blank stock power, and thus had failed to prove that the guarantee was genuine and valid. Bradford offered into evidence two Federal Bureau of Investigation (FBI) reports that had been prepared in a criminal investigation of the incident. The FBI reports indicated that Kleber's signature was genuine based on a fingerprint analysis and a comparison of the guarantee with genuine signature exemplars. After reluctantly admitting these two reports into evidence, the district court "stressed that it would give them no weight as competent proof." 622 F.Supp. at 212. Although Merrill Lynch offered no evidence contradicting the FBI reports, the court nonetheless found that Bradford had failed to prove the genuineness of the signature, and thus had not established that Merrill Lynch had guaranteed the Allens' signatures.

The third ground discussed by the district court in finding for defendant was that Bradford had "failed to establish that it was reasonable for it to rely upon the signature guarantee on a blank stock power which offers no description of the items to be ... liquidated." *Id.* at 211. Over the uncontradicted testimony of a Bradford employee that it is industry practice to accept blank stock powers, the court ruled that "[t]he stock power in question ... should have at least included a description of the security to be transferred." *Id.* at 212.

## DISCUSSION

### I

For appellant to succeed on this appeal it would have to persuade us that the trial court's decision against it on each issue was in error. We remain unpersuaded.

■ To begin, we think the district court correctly held that Bradford failed to establish that the Allens' signatures were forgeries. The Uniform Commercial Code provides the rule governing Bradford's claim. Under section 8–312 "[a]ny person guaranteeing a signature of an indorser of a security warrants that at the time of signing ... the signature was genuine" and is liable to "any person taking or dealing with the security in reliance on the guarantee." Appellant had the burden of establishing by a preponderance of the evidence each element of its claim for breach of warranty, including that the guaranteed signature was not genuine, that the defendant guaranteed the signature, and that the plaintiff could reasonably rely upon the guarantee. As Judge Sprizzo observed, Bradford failed to offer any proof on the first issue. The only evidence available was a sworn affidavit by the "real" Allens in which counsel claimed they state that they did not authorize the liquidation of their accounts. But Bradford's counsel for some inexplicable reason did not offer this affidavit in evidence. Instead, Bradford assumed that the forgery had been stipulated in the pre-trial order. Claiming that it was surprised at trial by defendant's denial of this stipulation, Bradford argues that the district court abused its discretion in denying Bradford's motion to amend the pre-trial order or to reopen the case to enable Bradford to submit evidence on this issue.

Motions to reopen or to modify a pre-trial order are addressed to the sound discretion of the trial judge. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971) (motion to reopen); *Cruz v. United States Lines Co.*, 386 F.2d 803, 804 (2d Cir.1967) (motion to modify under Fed.R.Civ.P. 16). We have previously noted that "[a] district court may permit modifications of a pre-trial order 'to prevent manifest injustice,' *see* Fed.R.Civ.P. 16, though modifications should not be allowed that would seriously prejudice one of the parties." *McFadden v. Sanchez*, 710 F.2d 907, 911 (2d Cir.), *cert. denied*, 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983).

In this case the district judge ruled that whether in fact a forgery had occurred had not been stipulated, but that it had been set as an issue for trial in the pre-trial order. Alternatively, assuming that it was not so

set forth, the district court noted that Bradford was not entitled to relief where it failed to object or request an adjournment after the issue was raised at trial. It is a close question whether forgery as a legal issue was plainly set forth in the pre-trial order. The relevant part of the order stated: "Whether Bradford may seek relief under the signature guarantee in question." Nonetheless, Bradford as plaintiff was obligated to present its case and to prove the elements of its cause of action. Here, it had notice of the trial court's doubts as to its lack of proof on the forgery issue and failed to take any remedial steps.

■ In *Bucky v. Sebo*, 208 F.2d 304 (2d Cir.1953), we held that where one side made at least a brief reference to an issue not raised in the pre-trial order, the trial judge was at liberty to consider that issue where the other side "did not then object or ask an adjournment." *Id.* at 305. Here, the issue of forgery was raised several times and described as the "key" issue during the short bench trial without objection by Bradford. We set forth the colloquy in the margin.[1] Consequently, the trial court did not abuse its discretion in denying Bradford's post-trial motion to modify the pre-trial order or to reopen the case to permit appellant to submit evidence already available to it. *See also Clark v. Pennsylvania Railroad Co.*, 328 F.2d 591 (2d Cir. 1964) (Medina, J.) (no abuse of discretion to admit testimony of witnesses omitted from pre-trial order where opposing counsel did not accept court's offer of an adjournment).

---

1. THE COURT: ... [T]here are not that many contested issues of fact, are there?

MR. MAIONE [Counsel for Bradford]: No, your Honor.

MR. MARSHALL [Counsel for Merrill Lynch]: ... We think there are certainly elements that have to be proved by the plaintiff.

THE COURT: Like a forgery?

MR. MARSHALL: Yes, your Honor.

\*     \*     \*     \*     \*     \*

THE COURT: Do we have testimony from the Allens as to whether it is or is not a forgery?

MR. MARSHALL: No, your Honor, no testimony.

THE COURT: Why not?

MR. MAIONE: There was purportedly an affidavit of forgery that they signed, but we never deposed them.

THE COURT: You are trying your case very thin. There are a lot of risks in that.

MR. MAIONE: Not necessarily.

THE COURT: These are the people that allegedly claim they never authorized the liquidation of the account.

MR. MAIONE: Correct.

THE COURT: I would think you should have had them, from your standpoint. But that's up to you, it's your judgment. You are at trial now, and it's too late to depose them now.

But I certainly would have expected in a case of this sort where I read your pretrial order and find that the accounts were liquidated without their consent, it's alleged, that the people would be deposed and said, "We did not give our consent."

MR. COLLINS: [Counsel for Bradford]: They did that when they filed the—we stipulated to that fact.

MR. MARSHALL: We do not.

\*     \*     \*     \*     \*     \*

MR. COLLINS: But the question in this case is the signature guaranty.

THE COURT: Well, that's a legal question, I mean, I take it an element of your case is, is it not, that there was a forgery here?

MR. COLLINS: Yes.

THE COURT: The guaranty—

MR. MARSHALL: That has not been stipulated to.

THE COURT: I didn't read that as a stipulation. What's stipulated to is the fact that someone claimed there was a forgery.

\*     \*     \*     \*     \*     \*

THE COURT: Is the genuineness or non-genuineness of the signature relevant?

MR. MARSHALL: Of whose signature?

THE COURT: Of the signature that you guarantee?

MR. MARSHALL: Yes, it's very relevant, your Honor.

THE COURT: How so?

MR. MARSHALL: It's part of the plaintiff's burden of proof. Unless the plaintiff's signatures are forgeries, your Honor, there is no obligation on the part of Merrill Lynch, assuming for the sake of argument that that is our guaranty stamp, to pay.

THE COURT: But I take it you would agree that the lack of genuineness—the question of genuineness is relevant to the case because if the signature was in fact genuine, right, then you would have no loss that you could look to them on the guaranty.

MR. MAIONE: That's right.

MR. MARSHALL: That's right.

THE COURT: So the key issue is was there a forgery?

MR. MARSHALL: Yes, your Honor, that's correct.

We do not believe that *Sanders v. International Association of Bridge, Structural and Ornamental Iron Workers,* 546 F.2d 879 (10th Cir.1976), is to the contrary. The *Sanders* court held that the trial court abused its discretion in not reopening the case when it became clear *after* trial that the trial judge was seriously concerned about the issue upon which he rested his decision. Similarly, the instant case is distinguishable from *Kanelos v. Kettler,* 406 F.2d 951 (D.C.Cir.1968), where the court suggested that the trial court erred in not reopening a case decided on a defense not found in either the pleadings or pre-trial statement. In that case, the court "raise[d] for the first time and simultaneously rule[d] on a new point which the losing party ha[d] had no occasion to address with evidence." *Id.* at 954 n. 15. In the instant case, Bradford failed to avail itself of numerous opportunities to object or request an adjournment at trial. Thus, we affirm on the district court's alternate ground that by failing to object or offer the Allens' testimony, Bradford waived its right to relief on this issue.

## II

Our holding on the appellant's first claim disposes of this appeal. But we write briefly on the second issue to make clear our view—which differs from that of the district court—on the second evidentiary issue. The trial court found that Bradford had failed to establish the genuineness of the Kleber signature on the Merrill Lynch guarantee. In reaching this conclusion Judge Sprizzo gave no weight to two FBI reports which indicated that the Kleber signature was genuine based on signature and fingerprint analyses.

■ Discussion begins with Fed.R.Evid. 803(8)(C) which provides that in a civil action, reports and statements of public offices or agencies that set forth "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness," are not excluded by the hearsay rule. In deciding questions of admissibility under 803(8)(C), the rule "is to be applied in a common sense manner, subject to the district court's sound exercise of discretion in determining whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission." *City of New York v. Pullman, Inc.,* 662 F.2d 910, 914 (2d Cir.1981), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982). To exclude evidence which technically falls under 803(8)(C) there must be "an affirmative showing of untrustworthiness, beyond the obvious fact that the declarant is not in court to testify." *Kehm v. Proctor & Gamble Manufacturing Co.,* 724 F.2d 613, 618 (8th Cir.1983). This rule is premised on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports. *See Ellis v. International Playtex Inc.,* 745 F.2d 292, 300 (4th Cir.1984). The weight and credibility extended to government reports admitted as exceptions to the hearsay rule are to be determined by the trier of fact. *See Rosario v. Amalgamated Ladies Garment Cutters' Union,* 605 F.2d 1228, 1251 (2d Cir. 1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980).

■ Here the district court reluctantly admitted the two FBI reports but stressed that it would give them "no weight" because the preparers were not subject to cross-examination. 622 F.Supp. at 212. Under the cited decisions, the district court correctly admitted the FBI reports as falling within the public records hearsay exception; but it erred in giving them *no* weight. While a trier of fact is not bound by the conclusions of expert witnesses and is free to examine handwriting exemplars to draw its own conclusions, these reports were especially reliable since they were prepared by the FBI in a criminal investigation which was only tangentially related to this civil action. Further, where the trier of fact is not competent to make its own determination—as in the case of identifying a fingerprint—it should be most reluctant to disregard the only expert testimony before it on that point.

Finally, the reason given by the district court for ignoring this evidence—the preparer was unavailable for cross-examination—was simply another way of saying that the report was hearsay. Ignoring it on this ground is inconsistent with the notion of having exceptions to the hearsay rule. Consequently, it was error for the trial court after admitting the FBI reports to accord them no weight.

### III

The third ground upon which the court found for the defendant was that Bradford had "failed to establish that it was reasonable for it to rely upon the signature guarantee on a blank stock power which offers no description of the items to be ... liquidated." 622 F.Supp. at 211. The district court's ruling strikes us at first glance as questionable because it appears to have focused on the law governing the physical transfer of stock certificates, rather than the redemption of mutual fund shares. Nonetheless, we decline to review it because its determination would not affect the outcome of this case.

### CONCLUSION

The order of the district court is affirmed.